FILED

2013 Aug-07  PM 02:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| ELIZABETH TAYLOR PIKE, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 6:12-cv-2733-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.  Introduction

The plaintiff, Elizabeth Taylor Pike, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. Pike timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Pike was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a seventh grade education, as well as training to be a certified nurse's aide. (Tr. at 46-47.) Her past work experiences include employment

as a nurse's aide and briefly as a boat assembler. (*Id*.) Ms. Pike claims that she became disabled on October 15, 2007, due to head, neck, back, foot, hand, and side pain, dizziness, incontinence, and memory loss. (Tr. at 11; 52-59 )

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Pike meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 14.) He further determined that Ms. Pike has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's lumbosacral radiculopathy, cervical spondylosis,

parethesias/numbness, peripheral neuropathy, anemia/folate deficiency, other demyelinating disease of the cervical nervous system, headaches, hypertension, and dysthymia are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 18.) The ALJ did not find Ms. Pike's allegations to be totally credible, and he determined that she has the following residual functional capacity: light work as defined in 20 CFR 404.1567(b) except that she is limited to simple, repetitive, non-complex tasks; can occasionally bend and stoop but do no pushing/pulling with lower extremities; no climbing or driving; cannot work at unprotected heights; no more than mild to moderate pain and depression with their mild to moderate effect on her ability to to concentrate and have the requisite persistence and pace necessary to perform job tasks. (Tr. at 20-21.)

According to the ALJ, Ms. Pike is unable to perform any of her past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the regulations. (Tr. at 26.) He determined that Plaintiff's "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

claimant is 'not disabled,' whether or not the claimant has transferable job skills."
(*Id.*) Even though Plaintiff cannot perform the full range of light work, the ALJ used
Medical-Vocation Rule 204.00 as a guideline, and testimony from a vocational expert,
Dr. Kessler, in concluding that there are a significant number of jobs in the national
economy that Plaintiff is capable of performing, such as general office clerk,
inspector/tester, and receptionist/information clerk. (Tr. at 27.) The ALJ concluded
his findings by stating that Plaintiff "has not been under a disability, as defined in the
Social Security Act, from October 15, 2007, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is
a narrow one. The scope of its review is limited to determining (1) whether there is
substantial evidence in the record as a whole to support the findings of the
Commissioner, and (2) whether the correct legal standards were applied. *See
Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d
1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the
Commissioner with deference, but applies close scrutiny to the legal conclusions. *See
Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts,
weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The

substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Ms. Pike alleges that the ALJ's decision should be reversed and remanded because the ALJ did not properly assess the credibility of her testimony in accordance with the Eleventh's Circuit Pain Standard.   (Doc. 10 at 7.) In particular, Plaintiff asserts that the ALJ's evaluation of her subjective complaints was improper and that

the ALJ's conclusions are "irrational," "wholly inconsistent with the record," and "not supported by substantial evidence." (*Id.*)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").

Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but the determination cannot be a "broad rejection which is "not enough to enable [a reviewing court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms. (Tr. at 23.) However, the ALJ also found that "the claimant's statements . . . concerning the intensity, persistence, and limiting effects of those symptoms are not fully credible to the extent they are inconsistent with the above residual capacity." (*Id.*)  The ALJ discredited Plaintiff's subjective complaints because no treating or examining physician reported the existence of limitations as severe as Plaintiff alleged and because Plaintiff's complaints were inconsistent with her reported daily activities. (Tr. 23-25.)

Plaintiff contends that the ALJ's decisions were not supported by substantial evidence. (Doc. 10 at 7.)  Plaintiff further alleges that the ALJ disregarded substantial medical evidence and substituted in its place his own medical opinion. (Doc. 10 at 10.)

When discrediting a plaintiff's subjective pain testimony, it is required "that such articulation or reasons by the Secretary be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Contrary to Plaintiff's allegations, the ALJ relied heavily on the evidence in the record, including Plaintiff's objective medical history, medical records and her testimony regarding her daily activities, when assessing her subjective complaints of disabling pain. (Tr. at 23–27.) Although Plaintiff alleges that her disability began in October 2007, the ALJ properly recognized that there is no medical evidence of record prior to April 2010. (Tr. at 23.) Additionally, Plaintiff's eventual treating physician, Dr. Hogan, reported in December 2010 that extensive evaluation had revealed a normal Lumbar Puncture (LP) and Multiple Sclerosis (MS) profile as well as a normal Visual Evoked Potential (VEP), revealing that it was very possible that changes in Plaintiff's brain MRI were vascular. (Tr. at 325-336.) Dr. Hogan has not diagnosed Plaintiff with MS and, while he has provided a limited supply of pain medications, has never reported that Plaintiff had disabling pain or limitations from any of her impairments or combinations of impairments. (Tr. at 237-250, 325-336, 376-378.)

Plaintiff testified that she had experienced significant side effects from her medication. (Tr. at 24.) As the ALJ noted, however, Plaintiff's medical records do not

support this allegation. There is no medical evidence that Plaintiff ever reported adverse side effects from the medication to Dr. Hogan, nor is there evidence that she reported side effects or disabling pain or limitations to the medical professionals at the Good Samaritan Clinic. (Tr. at 337-359, 373-378.) When Dr. Meleth examined Plaintiff, he neither reported that she had complained of side effects to medications, nor that she had disabling pain or limitations. (Tr. at 251-255.)

Plaintiff further alleges she suffers from memory and concentration impairments, social and stress difficulties, and confusion. (Tr. at 25.) These allegations are also inconsistent with the medical records. Dr. Hogan consistently reported that Plaintiff's mood and affect were normal and he never reported any disabling mental limitations. (Tr. at 237-250, 325-336, 376-378.) While Dr. Gragg reported that Plaintiff did have a mild case of dysthymia, he also reported that Plaintiff's social skills, intellectual functioning, and ability to respond to supervision were adequate so that her condition did not rise to a level that affected her employability. (Tr. at 259-260.) Dr. Gragg also noted that Plaintiff was able to handle work-related stress effectively and that he did not believe that there were any intellectual or psychological features that would interfere with Plaintiff's ability to function in a work environment. (*Id.*)

The ALJ also relied on Plaintiff's daily activities in discrediting Plaintiff's subjective pain testimony. Plaintiff's daily activities consisted of walking around, making the bed, doing housework with the help of her husband, going to church, going to her parents' home, and cooking supper. (Tr. at 202-209.) Further, Plaintiff reported at the Good Samaritan Clinic that she used walking for exercise, pain control, and weight loss. (Tr. at 374.) The ALJ properly noted that these activities are not consistent with allegations of disabling pain and impairment such as the giving way of legs, dizziness, and balance problems that Plaintiff had alleged. (Tr. at 24-25.) Finally, when asked to consider Plaintiff's age, education, work experience, and RFC, Dr. Kessler, the vocational expert, testified that Plaintiff would be able to perform the representative light unskilled occupations of general office clerk. (Tr. at 87-89.)

Plaintiff also argues that the simple failure of Dr. Hogan to use the word "disabled" or set forth specific limitations in his report does not necessarily mean that Dr. Hogan did not believe that Plaintiff suffered from severe symptoms. (Doc. 10 at 11.) The ALJ, however, did not solely rely on the records from Dr. Hogan, but rather incorporated these records into a larger set of medical records and reports that consistently indicate that Plaintiff did not have any disabling pain or limitations. (Tr. at 25.) Again, as the ALJ noted, none of the claimant's treating physicians have

reported that she has disabling pain or limitations. (*Id.*)

Contrary to Plaintiff's argument, the ALJ not only did not "play doctor" or make his own independent medical findings, but instead relied upon the objective medical records and reports of the several treating and examining physicians that Plaintiff visited. The ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The reasons articulated are not "irrational or wholly inconsistent with the record" as Plaintiff claims.

The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that she could perform a reduced range of light work. The ALJ's determination that Plaintiff's testimony of her disabling pain was not credible is supported by substantial evidence. This Court will not substitute its judgment for that of the ALJ's when, as here, it is supported by substantial evidence.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Pike's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 7th day of August 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

[170956]